# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5462 | **DATE** | 5/3/2001 |
| **CASE TITLE** | Carlton Shelton vs. Ernst & Young | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Defendants' motion to dismiss plaintiff's first amended complaint and for sanctions are granted (#12), (#18). Plaintiff's claims in his amended complaint are dismissed with prejudice.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | **Document Number** |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | MAY - 4 2001 | | |
| ✓ | Docketing to mail notices. | | date docketed | | **21** |
| ✓ | Mail AO 450 form. | | IS | | |
| | Copy to judge/magistrate judge. | | docketing deputy initials | | |
| | | courtroom deputy's initials | FILED FOR DOCKETING 01 MAY -3 PM 5:09 | date mailed notice | |
| | AC | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED

MAY - 4 2001

CARLTON L. SHELTON, )
)
      Plaintiff, )
)
v. )
)
ERNST & YOUNG, LLP, a Limited )
Partnership, SYLVIA POZARNSKY, )
individually and in her )
capacity as a Partner of ERNST )
& YOUNG, LLP. )

No. 00 C 5462

Magistrate Judge
Arlander Keys

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), and Motion for Sanctions, pursuant to FRCP 11. For the following reasons, Defendants' Motion to Dismiss and Motion for Sanctions are granted.

## BACKGROUND

In his First Amended Complaint ("Amended Complaint"), Plaintiff Carlton L. Shelton asserts various claims relating to the termination of his employment with Defendant Ernst & Young, LLP ("Ernst & Young"): (1) sex and race[1] discrimination under Title VII

---

[1] It is not entirely clear from Plaintiff's Amended Complaint whether he is asserting both race and gender discrimination under Title VII and the Illinois Human Rights Act, or merely gender discrimination. While his charge to the Equal

(continued...)



of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII")(West 2000) and/or the Illinois Human Rights Act, 775 ILCS 5/1-101, *et seq.* ("IHRA")(West 2001), against Defendants Ernst & Young and Sylvia Pozarnsky; and (2) breach of an oral employment contract against Defendant Ernst & Young.

Plaintiff is an African-American male who was hired by Ernst & Young in its Personal Financial Counseling ("PFC") practice in July of 1998. Ms. Pozarnsky managed Ernst & Young's PFC practice, and terminated Plaintiff's employment on April 30, 1999. According to Plaintiff, however, he was not taken off Ernst & Young's payroll until June 15, 1999. On March 22, 2000, three hundred and twenty -seven (327) days after his discharge (on April 30, 1999), Plaintiff filed a charge with the EEOC, alleging race and gender

---

[1](...continued)
Employment Opportunity Commission ("EEOC") lists sex and race discrimination, and paragraph one of his Amended Complaint mentions both gender and racial discrimination, the remainder of the Amended Complaint, dealing with discrimination, only mentions allegations concerning gender discrimination (*see* ¶¶s 15-21). Furthermore, to add to the confusion, Plaintiff's Amended Complaint goes directly from the heading "Facts" to "Count III", and the Court (as well as Defendants) are left pondering what constitutes Counts I and II. Since Count III is for the state breach of contract claim, the Court assumes that Counts I and II are for the sex and gender discrimination claims. Nonetheless, as explained in depth *infra*, Plaintiff's discrimination claims – whether they are for both race and gender discrimination, or merely gender discrimination – are dismissed, with prejudice, because they are time-barred.

discrimination. The EEOC issued a "Right to Sue" letter on June 5, 2000, and Plaintiff filed his original Complaint in federal court on September 5, 2000. (There is no evidence that Plaintiff filed a charge with the Illinois Human Rights Commission pursuant to the IHRA.)

On October 16, 2000, Defendants' counsel sent Plaintiff's counsel a letter, explaining in depth (and citing the relevant cases and statutes) that many – if not all – of Plaintiff's claims were groundless, and likely in violation of Rule 11 of the FRCP. On November 7, 2000, Plaintiff's counsel responded by letter, stating that he would file a motion to voluntarily dismiss the appropriate claims (although he did not specify which ones) by November 13, 2000. Nonetheless, by November 13, 2000, Plaintiff's counsel had not moved to dismiss any of the claims. However, on December 29, 2000, Plaintiff filed a Motion for Leave to Amend Plaintiff's Complaint and Jury Demand. In that Motion, Plaintiff's counsel stated that, based on discussions with Defendants' counsel, he agreed that some of the allegations were either time-barred, inapplicable, or that requiring Defendants to respond to them in their current form would be unfair to Defendants, and could detract from Plaintiff's meritorious allegations. By Order dated January 3, 2001, the Court granted Plaintiff's Motion to Amend the

Complaint by January 16, 2001. On January 16, 2001, Plaintiff filed his Amended Complaint, which still contained many of the claims that were in the original Complaint - claims that had been specifically addressed by Defendants' counsel in his October 16th letter. On February 8, 2001, Defendants filed their present Motion to Dismiss and for Sanctions.[2]

## MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. *Tucker v. Cassiday, Schade & Gloor*, No. 99 C 4001, 2000 WL 968828, at * 2 (N.D. Ill. July 13, 2000). Jurisdiction is the "power to decide" and must be conferred upon a federal court. *Id.* In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine subject matter jurisdiction. *Id.* The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *Id.* When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of

---

[2] On December 6, 2000, the district court reassigned this case to this Court pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1.

-4-

jurisdictional facts. *Id.*

As for the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the purpose of the rule is to test the sufficiency of the complaint and not to decide the merits of the case. *Id.* In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff, and all well-pled facts and allegations in the plaintiff's complaint must be taken as true. *Id.* The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir. 1994)).

## DISCUSSION

### I. Plaintiff's Title VII Claims Are Time-Barred and, Therefore, Dismissed Under FRCP 12(b)(1).

Compliance with the limitations period under Title VII for filing a charge with the EEOC is jurisdictional. *Lowell v. Glidden-Durkee, Division of SCM Corp.*, 529 F. Supp. 17, 18 (N.D. Ill. 1981). In order to pursue a Title VII claim, a plaintiff must file an EEOC charge within 300 days of the occurrence of the event

that forms the basis of the complaint.[3]  42 U.S.C. § 2000e-5(e);

*Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445 (7th Cir. 1994).

Significantly, "[f]ailure to do so bars litigation over those

claims." *Speer v. Rand McNally & Co.*, 123 F.3d 658, 662 (7th Cir.

1997).

Here, despite Plaintiff's assertion to the contrary, the event

that forms the basis of his discrimination claims is his

termination from Ernst & Young on April 30, 1999.  Plaintiff filed

his charge of discrimination with the EEOC on March 22, 2000 – 327

days after his termination.  Nonetheless, Plaintiff asserts in his

Response to Defendants' Motion to Dismiss ("Response") that he was

not officially taken off Ernst & Young's payroll until June 15,

1999, and that, consequently, he timely filed his charge within the

300 day requirement.  However, as the abundant case law undeniably

shows, when Plaintiff was taken off Ernst & Young's payroll is

totally irrelevant.  The critical date – that starts the 300 day

clock ticking – is when Plaintiff learned about the adverse

decision, and not when the financial consequences (such as being

---

[3] Under the applicable federal statute, a plaintiff has 180
days to file his claim, unless the forum state has an
administrative agency to which the EEOC defers.  Illinois has
such an agency – the Illinois Department of Human Rights – making
the limit 300 days, rather than 180 days, applicable to this
lawsuit.

taken off the payroll ) are felt, or when the termination becomes

effective. *See, e.g., Librizzi v. Children's Memorial Medical*

*Center*, 134 F.3d 1302, 1306 (7th Cir. 1998)("An adverse decision

whose effect is deferred gives rise to a claim when the decision is

made, not when the effect is felt. This is commonplace in the law

of employment discrimination."); *Kuemmerlein v. Bd. of Educ. of*

*Madison Metro. School Dist.*, 894 F.2d 257, 259-60 (7th Cir.

1990)(finding that the cause of action began to accrue on the day

that plaintiffs received the layoff decision, and not on the date

of the actual termination).

Nonetheless, Plaintiff attempts to circumvent the prevailing

case law by making several erroneous and frivolous arguments.[4]

First, Plaintiff argues, in his Response, that he first had

knowledge of Ernst & Young's adverse employment decision on June

15, 1999 – when he was officially taken off the payroll – and that

he felt the effects of this discrimination on June 30, 1999, the

last pay date. He then cites *Delaware State College v. Ricks,* 449

U.S. 250 (1980) for this proposition. However, Plaintiff's counsel

---

[4] As explained *infra*, these arguments are particularly
frivolous as Defendants' counsel specifically informed
Plaintiff's counsel (and even cited the relevant cases) of the
problems with his Title VII claims in an October 16, 2000 letter.

misunderstands and misapplies the relevant case law. *Ricks*[5] and its progeny clearly hold that the statute of limitation begins to run when the plaintiff first learns of the adverse employment action. *See, e.g., Davidson v. Board of Governors of State Colleges and Univs.*, 920 F.2d 441, 443 (7th Cir. 1990)(citing *Ricks* for the proposition that "[t]he Supreme Court has held that the time for attacking a discriminatory practice begins to run when the practice is first applied to you, not when the application blossoms into a full-blown injury."). Significantly, in Plaintiff's Amended Complaint, he states, in paragraphs 11 and 16, that he was discharged on April 30, 1999. He also states, in his EEOC charge, that he was terminated on April 30, 1999. Therefore, April 30, 1999 is, undisputedly, when Plaintiff learned of the adverse employment action. Plaintiff has, essentially, pled himself out of Court. The fact that his termination may have become effective at a later date is irrelevant for statute of limitations purposes. His claims under Title VII are time-barred.

---

[5] In *Ricks,* the Supreme Court held that the statute of limitations began to accrue when the plaintiff was informed that he would not be offered tenure – not when the one year "grace" contract had expired. 449 U.S. at 259-60. Here, similarly, the statute of limitations began to run when Plaintiff was informed that he was terminated (on April 30, 1999), and not when he was later taken off the payroll (on June 15, 1999).

Plaintiff next argues that the continuing violation theory applies to his case, and that he should be allowed to obtain relief for time-barred acts (such as the April 30th termination date) by linking that act with an act that is within the limitations period (such as the June 15th date, when he was taken off the payroll). However, fatal to Plaintiff's use of the continuing violation theory is that he fails to allege that any discriminatory act took place within the limitations period. *See Speer, supra,* 123 F.3d at 663 ("A continuing violation theory requires at least one viable charge within the appropriate limitations period.")(citation omitted); *Welch v. Cook County Clerk's Office,* 36 F. Supp.2d 1033, 1039-40 (N.D. Ill. 1999)("Under the continuing violation doctrine, failure to sue within the limitations period may be excused if a plaintiff links one or more time-barred acts to a discriminatory act that occurred within the limitations period.")(citations omitted).

Plaintiff argues in his Response that, between April 30, 1999 and June 15, 1999, he and Ernst & Young were engaged in ongoing conversations in an attempt to work out their differences without an interruption in pay. Although the Amended Complaint never states this theory, it is entirely irrelevant, because the case law

clearly shows that failing to correct alleged previous discrimination is *not* a new act of discrimination. *See Speer, supra,* 123 F.3d at 664 ("'[A]n employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.'")(citation omitted); *Librizzi, supra,* 134 F.3d at 1306 ("If an employer allows an appeal of the decision . . . the time to sue is unaffected - for failure to correct a violation of federal law is not itself a violation of that law.")(citations omitted). Therefore, assuming that Ernst & Young's decision to terminate Plaintiff on April 30th was, indeed, discriminatory, its failure to correct it is not a new act of discrimination. Consequently, as a preliminary matter, the continuing violation theory cannot even apply to the case *sub judice*, as there was no discriminatory act within the limitations period.[6]

---

[6] Even if there was a discriminatory act within the limitations period, the Court still has doubts as to whether the continuing violation theory would apply to this case. Plaintiff asserts that Ernst & Young committed a "serial violation" in that it had a covert policy of discrimination, where it discriminated against him in its hiring (by not promoting him as promised), in his work assignments (by giving him projects that were doomed to failure), in his evaluations (by giving him poor evaluations), and in his eventual termination. However, assuming there was a discriminatory act within the limitations period (which there is not), Plaintiff would need to show, *inter alia*, that the time-barred acts did not have a degree of permanence which should have
(continued...)

Furthermore, Plaintiff argues that equitable estoppel and/or equitable tolling should apply to the facts of this case. However, as with the continuing violation theory, these theories are not applicable to the case *sub judice*. For equitable estoppel to apply, Plaintiff would have to allege that Ernst & Young actively lulled him into inaction by promising not to plead the statute of limitations, or by hiding evidence. *Speer*, 123 F.3d at 663. Here, however, there are no allegations that Ernst & Young impeded Plaintiff's ability to pursue his discrimination claims. Even if Plaintiff believed that, pursuant to their negotiations, Ernst & Young might change its April 30, 1999 termination decision, as

---

[6](...continued)
triggered the employee's awareness that his rights had been violated. In *Selan v. Kiley*, 969 F.2d 560, 567 (7th Cir. 1992), the Seventh Circuit held that a transfer to a new department was "precisely the type of major, permanent change in employment status that should trigger an employee's awareness of the need to assert - or else lose - his rights." Similarly, here, it would seem that Plaintiff's April 30, 1999 termination would be the type of permanent change in employment status that should have triggered his awareness of his right to sue. Therefore, even assuming that the prerequisite of a continuing violation was met (i.e. that a discriminatory act occurred within the limitations period), it is doubtful that Plaintiff's termination on April 30th could be linked to that timely act. *See also Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d at 446 ("[T]he purpose of permitting a plaintiff to maintain a cause of action on the continuing violation theory is to permit the inclusion of acts whose character as discriminatory acts was not apparent at the time they occurred.")(citation omitted).

explained in *Librizzi*, *supra*, "neither denials of liability nor negotiations toll the period of limitations." 134 F.3d at 1307.

With respect to equitable tolling, Plaintiff would have to allege that he could not have obtained evidence of the discriminatory acts within the limitations period. Plaintiff cites *Davidson*, *supra*, to support his equitable tolling argument, but the facts of *Davidson* are distinguishable from the case at bar, and illustrate that equitable tolling is not applicable to the case *sub judice*. *Davidson* concerned a pay scheme that allegedly discriminated against older workers. In tolling the statute of limitations, the court held that the plaintiff did not have enough evidence to determine whether the compensation scheme was unlawful until new, younger employees were hired at higher salaries. 920 F.2d at 444. Here, however, Plaintiff had all the evidence he needed when he was terminated on April 30, 1999. Indeed, no new evidence of discrimination emerged after April 30, 1999 - being taken off the payroll on June 15th was merely the effect of the prior alleged discrimination and not new evidence of discrimination. Again, as with Plaintiff's other theories, this one is frivolous. Plaintiff's termination on April 30, 1999 provided him with all the information he needed to pursue a

discrimination claim.

## II. All Title VII Claims Against Ms. Pozarnsky Are Dismissed, Because Individuals Cannot Be Held Personally Liable Under Title VII.

Although Plaintiff's Title VII claims have been dismissed for the reasons discussed above – so this issue is moot – it is worth addressing, because Plaintiff's counsel refuses to accept the prevailing law that supervisors, such as Ms. Pozarnsky, cannot be held individually liable under Title VII. Liability for employment discrimination under Title VII can only be imposed against an individual who qualifies independently as an employer. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995). Under Title VII, an employer is defined as "a person engaged in an industry affecting commerce who has fifteen or more employees ... and any agent of such a person."[7] 42 U.S.C. § 2000e(b). Because Ms. Pozarnsky does not qualify as an employer, the Title VII claims as to her must be dismissed. *See, e.g., Welch, supra,* 36 F. Supp.2d at 1040 (dismissing Title VII claims against individual employees of the Cook County Clerk's Office); *Patel v. Board of Governors of State Colleges and Univs.*, No. 92 C.

---

[7] The Seventh Circuit recognized in *AIC Security* that the reference to "and any agent" serves only to establish respondeat superior liability and does not create individual liability under Title VII. *See AIC Security.*, 55 F.3d at 1281.

-13-

8300, 1997 WL 399644, at *2 (N.D. Ill. July 11, 1997) (explaining that lawsuits under Title VII must proceed against the employer directly, or through its agents in their official capacity).[8]

### III. Plaintiff's Claims under the IHRA Are Dismissed, Because Plaintiff Failed to Allege That He Exhausted Administrative Remedies Under the IHRA.

It is not entirely clear from Plaintiff's Amended Complaint whether he is seeking relief under the IHRA. In fact, his Response fails to address this issue at all. To the extent that Plaintiff is seeking relief under the IHRA, his claims are dismissed for failure to state a claim, as he failed to allege that he exhausted his administrative remedies.

In order to invoke the protections of the IHRA, a plaintiff must comply with its provisions. *Stoecklein v. Illinois Tool Works, Inc.*, 589 F. Supp. 139, 145 (N.D. Ill. 1984). It is well settled that the IHRA does not allow an aggrieved party direct

---

[8] In his Response, Plaintiff argues that dismissing Ms. Pozarnsky from Title VII liability would be premature, as Ms. Pozarnsky's actions exceeded the scope of her employment, and constituted personal acts intentionally directed at Plaintiff. Plaintiff cites no legal authority for this proposition, and does not even address the abundant case law which says otherwise. As explained *infra*, refusing to dismiss Ms. Pozarnsky from this lawsuit, especially after Defendants' counsel, in his October 16th letter, apprized Plaintiff's counsel of the state of the law, is particularly troublesome, and serves as one of the bases for awarding sanctions against Plaintiff.

access to the courts. *Allen v. City of Chicago*, 828 F. Supp. 543, 559 (N.D. Ill. 1993). Instead, a complainant must first file a charge with the Illinois Department of Human Rights ("IDHR"), and then undertake to exhaust the administrative remedies under the IHRA. *Id.* Therefore, in order for a plaintiff to state a claim under the IHRA, an allegation attesting that the administrative remedies provided in the IHRA have been exhausted is necessary. *Id.* Here, while Plaintiff filed a charge with the EEOC, there is no allegation that he filed a charge with the IDHR.[9]

**IV. To the Extent Plaintiff Seeks Relief for Emotional Distress, These Claims Are Preempted By the IHRA.**

Again, it is not clear from Plaintiff's Amended Complaint whether he is alleging claims for intentional or negligent infliction of emotional distress. To the extent he is, these claims are dismissed with prejudice, as the IHRA preempts state tort claims that are "inextricably linked" with the underlying facts of civil rights violations listed in the IHRA. *See Tucker*, *supra*, 2000 WL 968828, at * 5.

---

[9] Significantly, exhausting administrative proceedings before the EEOC does not satisfy the IHRA exhaustion requirement. *See Scott v. Sears, Roebuck and Co.*, 605 F. Supp. 1047, 1053 (N.D. Ill. 1985)(holding that despite EEOC filing, federal court lacks jurisdiction over IHRA claim, if there has been no filing with the IDHR), *aff'd*, 798 F.2d 210 (7th Cir. 1986).

Here, the only allegations in the Amended Complaint that conceivably relate to emotional distress are those for race and gender discrimination – claims which are covered by the IHRA. Therefore, any claims for emotional distress are preempted, and, accordingly, dismissed. *See, e.g., Smith v. Chicago Park Dist.,* No. 98 C 1691, 1999 WL 33883, at * 5 (N.D. Ill. 1999)(dismissing intentional infliction claim, predicated on same facts as sexual and racial harassment claims, because of IHRA preemption).[10]

## V. Plaintiff's State Breach of Contract Claim Is Dismissed, Because He Fails to Allege Duration of the Employment Contract and Adequate Consideration.[11]

Under Illinois law, an oral or written contact that does not specify the duration of the employment is presumed to be terminable at will by either party, and an employment-at-will relationship may be terminated for good cause, bad cause, or no cause at all. *Piech v. Arthur Anderson & Co., S.C.,* 841 F. Supp. 825, 830 (N.D. Ill 1994)(citations omitted). This presumption of employment at-will, however, may be overcome by demonstrating that the parties intended

---

[10] Because the Court is dismissing any emotional distress claim based on IHRA preemption, there is no need to address Defendants' additional arguments that Plaintiff has failed to state a claim for emotional distress.

[11] This Court has supplemental, as well as diversity, jurisdiction over Plaintiff's state law breach of contract claim.

to contract otherwise. *Id.* Furthermore, "[o]ral employment contracts, at least under Illinois law, are viewed with more skepticism than their formal written counterparts." *Tolmie v. United Parcel Service, Inc.*, 930 F.2d 579, 581 (7th Cir. 1991).

Here, Plaintiff alleges the existence of an oral employment contract, where Ernst & Young promised to begin his employment at a management level higher than the level at which he began, and promised to give him a raise and a promotion within one year of his start date. (*See* Amended Complaint ¶¶ 23-26.) Plaintiff also alleges that he turned down, and/or discontinued his pursuit of, other positions at the same or comparable level when he accepted the lower position at Ernst & Young. (*Id.*)

There are two fundamental problems with Plaintiff's assertion that his employment with Ernst & Young was not at-will, and that he had an oral employment contract. First and foremost, Plaintiff has failed to allege that Ernst & Young specified a duration for his employment. Second, Plaintiff has not alleged sufficient consideration to support an employment contract. *See Schoeneck v. Chicago Nat. League Ball Club, Inc.*, 867 F. Supp. 696, 702 (N.D. Ill. 1994) ("Under Illinois law, . . . a valid oral contract for permanent employment must contain a clear and definite statement as

to duration and be supported by sufficient consideration.").

Fatal to Plaintiff's breach of contract claim is its lack of a durational term. While Plaintiff alleges that he was promised a promotion within a year, he does not allege that he was promised employment for at least a year, or for any length of time.[12] As explained in *Krieger v. Adler, Kaplan, & Begy*, No. 94 C 7809, 1996 WL 6540, at * 6 (N.D. Ill. Jan. 5, 1996)(citation omitted), "courts impose substantial obstacles in the employee's path of overcoming [presumption of at-will employment] and showing that he and the employer contracted for permanent or lifetime employment. First, the plaintiff must show that the employer made 'clear and definite' oral promises concerning the terms and duration of his employment."

---

[12] To the extent Plaintiff is arguing that Ernst & Young breached an oral employment contract to promote him, this allegation is not "clear and definite" as required by the Seventh Circuit. *See Tolmie, supra*, 930 F.2d at 581 (stating that "not just any offer will support an oral employment contract. On the contrary, the offer must encompass terms that are 'clear and definite.'"). The Seventh Circuit has also explained that "the requirement of a clear and definite offer prevents employers from incurring contractual liability for informal statements that were never intended to be anything more than expressions of 'long continuing good will and hope for eternal association.'". *Tolmie*, 930 F.2d at 581. In the case *sub judice*, Plaintiff has failed to allege any specifics concerning Ernst & Young's alleged promise to promote him, such as specific salary or benefits, title, or scope of responsibilities. In sum, there simply is no evidence that Ernst & Young made a "clear and definite" oral promise to Plaintiff regarding duration or promotions.

However, in the case *sub judice*, Plaintiff fails to mention anywhere in his Amended Complaint the duration of the supposed employment contract.

Plaintiff also fails to allege sufficient consideration to support an employment contract. Under Illinois law, consideration for an employer's oral promise to employ a person for a period of time is provided when an employee makes in return some sacrifice that the employee probably would not have made absent the guarantee of continued permanent employment. *Milazzo v. O'Connell*, 925 F. Supp. 1331, 1340 (N.D. Ill. 1996)(citation omitted). Significantly, under Illinois law, an employee's mere waiving of a right to pursue or accept alternative employment opportunities does not constitute adequate consideration to support a promise to employ the employee for a certain period of time. *Id.* at 1341 (citation omitted). Rather, the employee must forego a real and favorable job offer from another employer, or give up a secure position elsewhere. *Id.* As explained in *Schoeneck, supra*:

> [Employee] offers no evidence to show that she gave up another job, relocated to take this one, or made a comparable sacrifice. The most she can assert is that she gave up the opportunity to *seek* other employment. Consideration must be made of sterner stuff. Foregoing another employment opportunity is insufficient consideration for an oral contract.

867 F. Supp. at 702 (emphasis in original)(citations omitted); *see also Taylor v. Canteen Corp.*, 69 F.3d 773, 783 (7th Cir. 1995)("[A]bsent special circumstances, the mere relinquishment of a prior position, which must be given up in order to accept the new offer, will not support anything more than an at-will relationship."); *cf. Kula v. J.K. Schofield & Co., Inc.*, 668 F. Supp. 1126, 1132 (N.D. Ill. 1987)(finding sufficient consideration to withstand motion to dismiss, where employer solicited employee for job, and employee left previous position to accept new employment, giving up a number of fringe benefits and triggering the covenant not to compete with his prior employer).

Here, Plaintiff's allegations are of the general nature - that he turned down and/or discontinued his pursuit of other job opportunities. He does not allege that he relinquished secure employment elsewhere, was solicited by Ernst & Young, relocated, or forewent a favorable job offer from another specific employer. Consequently, there is no consideration to support a contract for a specified duration (even if Plaintiff had alleged a specified duration, which he did not). [13] Accordingly, Plaintiff's breach of

---

[13] Plaintiff relies on several cases to support his contention that there was an oral employment contract. However, these cases can be easily distinguished, as they contain detailed
(continued...)

contract claim is dismissed with prejudice.[14]

## VI. Sanctions Are Appropriate Against Plaintiff's Counsel For Bringing the Title VII Claims After They Were Clearly Time-Barred, And For Suing Ms. Pozarnsky, In Her Individual Capacity, Under Title VII.

FRCP 11 imposes an affirmative duty of reasonable investigation on an attorney signing a court paper, such as a

---

[13](...continued)
allegations of duration and/or adequate consideration. For instance, in *Miller v. Community Discount Centers, Inc.*, 228 N.E.2d 113 (Ill. App. Ct. 1967), the court found the existence of an employment contract, based on a welcoming letter, which specified that one half of employee's moving expenses would be paid at once, and the balance *after* one year. 228 N.E.2d at 115. Furthermore, the court found it "inconceivable" that a man of plaintiff's age would leave his home in Chicago for the mere possibility that he would have a permanent position. *Id.* Here, there is no allegation that Plaintiff left a secure job to work for Ernst & Young (as opposed to general assertions that he gave up alternative job opportunities), or that he was promised any kind of reimbursement after a year. *Maier v. Lucent Technologies, Inc.*, 120 F.3d 730, 737-38 (7th Cir. 1997) can also be distinguished in that, in *Maier*, there was a letter which specifically stated that the employee would be placed in another assignment (that he got to choose) when his work on the transition team was finished. The court found that the specific terms of the letter created a contract for a durational term. Here, however, Plaintiff merely asserts that he was promised a promotion, without any accompanying details to transform the presumption of at-will employment into one for a durational term.

[14] Plaintiff's breach of contract claim is dismissed with prejudice (as opposed to without prejudice), because he has had ample time to plead allegations concerning duration and consideration. Therefore, the Court assumes that, if Plaintiff could have pled more specific allegations concerning duration and consideration, he would have done so in his Amended Complaint.

complaint. Specifically, Rule 11 provides two grounds for sanctions: the "frivolousness clause" and the "improper clause."[15] *Fred A. Smith Lumber Co. v. Edinin*, 845 F.2d 750, 752 (7th Cir. 1988). In the case at bar, the "frivolousness" clause is implicated, as Plaintiff's counsel failed to conduct a reasonable inquiry into the relevant facts and law concerning the Title VII claims, even after Defendants' counsel specifically informed Plaintiff's counsel, in the October 16, 2000 letter, of the inherent problems with these claims. Although Plaintiff's counsel had an opportunity to withdraw these claims – and even indicated that he would do so in November 2000 – he, nonetheless, filed an Amended Complaint, in January 2001, which still contained the Title VII claims.

Specifically, Plaintiff's counsel was warned that Plaintiff's

---

[15] Rule 11(b) of the Federal Rules of Civil Procedure provides that when a party submits a pleading to a court, the party is: certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances (1) it is not being presented for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the costs of litigation; (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support.

Title VII claims were time-barred, and that individual supervisors could not be held liable under Title VII. Despite this admonishment, Plaintiff's counsel persisted with these frivolous claims. In *Edidin*, the Seventh Circuit imposed sanctions under FRCP 11, where, as here, the plaintiff's claims were barred by the applicable statute of limitations, and where the plaintiffs, as here, had been previously warned.[16] 845 F.2d at 753. Accordingly, the Court orders that Plaintiff's counsel pay Defendants the reasonable expenses and attorneys' fees associated with defending Plaintiff's Title VII claims.

Furthermore, Plaintiff's counsel's insistence on suing Ms. Pozarnsky for individual liability, under Title VII, goes against well-established Seventh Circuit precedent, and at least one court within the Seventh Circuit has sanctioned counsel, under FRCP 11, for persisting with such a claim. *See Noe v. Interstate Brands Corp.*, 188 F.R.D. 513, 516 (S.D. Ind. 1999)(sanctioning counsel, under FRCP 11, for pursuing the legally frivolous claim of seeking

---

[16] Plaintiff's counsel's use of the continuing violation theory, equitable estoppel, and equitable tolling arguments to circumvent the import of the statute of limitations was of no avail. As discussed *supra*, such defenses to the limitations period were not relevant to the facts of the case *sub judice*. Most damaging is that Plaintiff failed to allege that any discriminatory act occurred within the limitations period.

to hold supervisors individually liable under Title VII, especially after counsel had been previously alerted to the law of this circuit). Plaintiff's counsel's attempt to try to defend this claim, by asserting -- with no legal authority - that Ms. Pozarnsky's actions exceeded the scope of her employment, only exacerbates the frivolousness of this claim. Accordingly, Plaintiff's counsel is also ordered to pay Defendants the reasonable expenses and attorneys' fees for not having dismissed Ms. Pozarnsky from individual liability, under Title VII, in the Amended Complaint.[17]

Finally, in response to Defendants' Motion for Sanctions, Plaintiff's counsel argues that Rule 11 provides for sanctions, not fee shifting, and that such sanctions should be used to deter and, if necessary, punish improper conduct, rather than to compensate the prevailing party. This Court is in complete agreement with counsel's argument in this regard, and it is extremely rare that it has granted motions for Rule 11 sanctions. However, where, as

---

[17] Defendants, correctly, do not request that sanctions, under FRCP 11, be applied to Plaintiff's other claims (or potential claims), such as the breach of contract claim, claims under the IHRA, or claims for emotional distress. Accordingly, the Court only sanctions Plaintiff's counsel for his pursuit of the Title VII claims, and for refusing to dismiss Ms. Pozarnsky from individual liability under Title VII. The fees and costs are to be apportioned accordingly.

here, counsel has persisted in going forth with clearly legally baseless allegations and arguments – even after having been apprized of case law that clearly indicates their lack of merit – such sanctions are mandated. Contrary to counsel's argument, the effect of the sanction is not to penalize him for aggressively advocating Plaintiff's rights, but is meant as a partial recoupment by Defendants of their expenditures in defending these clearly legally baseless allegations. Those who merely engage in aggressive advocacy will have nothing to fear.

### CONCLUSION

Accordingly, for the reasons set forth above, Defendants' Motion to Dismiss and Motion for Sanctions are granted. Plaintiff's claims in his Amended Complaint are dismissed with prejudice.

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss and Motion for Sanctions be, and the same hereby are, GRANTED.

DATED: May 3, 2001

ENTER:

ARLANDER KEYS
United States Magistrate Judge